United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE TIFFANY et al., | No. C 06-2524 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 19] |
| HOMETOWN BUFFET, INC. et al., | |
| Defendant. | |

This matter comes before the Court on Plaintiffs Elaine Tiffany and Shannon Whitehead's (collectively, "Plaintiffs") Motion to Remand Case to State Court [Docket No. 19]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court hereby DENIES Plaintiffs' Motion to Remand Case to State Court.

## **BACKGROUND**

**A.  Factual Background**

**1.  Parties**

HomeTown Buffet, Inc. is a distinct, wholly owned subsidiary of Buffets, Inc. Holovnia Decl. at ¶ 3. HomeTown Buffet, Inc. is organized under the laws of, and has its principal place of business in, Minnesota. Notice of Removal at 4, n. 3. Hometown Buffet, Inc. owns and operates 58 HomeTown Buffet restaurants in California. Holovnia Decl. at ¶ 3.

OCB Restaurant Company, LLC ("OCB") is a distinct, wholly owned subsidiary of Buffets, Inc. Holovnia Decl. at ¶ 3. OCB is organized under the laws of, and has its principal place of business in, Minnesota. Notice of Removal at ¶ 15. OCB owns and operates 28 HomeTown Buffet restaurants in California. Holovnia Decl. at ¶ 3.

Plaintiff Shannon Whitehead and plaintiff Elaine Tiffany are both former managers of Hometown Buffet restaurants in California. First Amended Complaint ("FAC") at ¶¶ 6, 10. Plaintiffs reside in California. *Id.* at ¶ 1.

### 2. Allegations

This is a class action lawsuit for unpaid overtime and other wages brought on behalf of California salaried managers of defendants Hometown Buffet, Inc. and OCB (collectively, "Defendants"). Plaintiffs allege that Defendants misclassified their California salaried managers as "exempt" employees, thereby denying them overtime pay in violation of California law. The lawsuit alleges seven causes of action, all of which are based on state law: (1) recovery of overtime pay under California Labor Code § 1194, (2) restitution of overtime pay, (3) violation of California Labor Code § 3751, (4) violation of California Bus. & Prof. Code § 17200 et seq., (5) penalties under California Labor Code § 203, (6) penalties under California Labor Code § 226, and (7) damages under California Labor Code § 226.7. FAC at ¶¶ 13-33. The FAC does not allege or demand any specific amount of damages.

Plaintiffs originally filed a complaint in San Francisco Superior Court on November 12, 2004, naming Hometown Buffet, Inc. as a defendant along with 50 fictitiously named parties. Notice of Removal, Ex. B (copy of original complaint). At the time they filed their complaint, Plaintiffs and their counsel believed that HomeTown Buffet, Inc. operated all "HomeTown Buffet" restaurants in California, and that HomeTown Buffet, Inc. was the sole employer of Plaintiffs and other putative class members. *See* Tiffany Decl. at ¶ 2; Whitehead Decl at ¶ 2; Clapp Decl at ¶ 2. At that time, they did not know that OCB owned and operated any of HomeTown Buffet's restaurants in California or that it employed any of the putative class members. *Id.*

The Complaint defined the proposed class as

All individuals who worked as a salaried 'Manager' (defined below) in a company-owned HomeTown Buffet restaurant in California during the applicable limitations period and who worked more than 40 hours per work or 8 hours per day without receiving overtime pay, and/or who were participants in defendant's management bonus plan(s). 'Manager' refers to any salaried restaurant management position.

2

Complaint at ¶ 5.

The Complaint further referred to HomeTown Buffet, Inc. as "plaintiffs' employer." *Id.* at ¶ 3.

On January 4, 2005, defendant HomeTown Buffet, Inc. answered the complaint and immediately removed the case to this Court, alleging diversity jurisdiction. In its Notice of Removal filed on January 4, 2005 ("Original Notice of Removal"), HomeTown Buffet, Inc. (referring to itself in abbreviated style as "HomeTown Buffet," *see* Original Notice of Removal at 1:22-23) stated that it "operates 88 restaurants in California," *id.* at 8:4-6. HomeTown Buffet, Inc. further stated that plaintiff Whitehead worked as a restaurant manager for HomeTown Buffet, Inc. between August 2, 2000 and April 12, 2003. *Id.* at 5:2-3.

As an aside, it appears that Hometown Buffet, Inc. was wrong on both counts: First, on March 15, 2005, HomeTown Buffet, Inc. filed a Memorandum in Support of its Opposition to Plaintiffs' Motion to Remand which stated, "HomeTown Buffet operated approximately 60 restaurants in the state during the limitations period." Notice of Second Removal, Ex. G, Vol. 2, Tab 2, at 5:4. It has since stated that the correct number is 58. Clapp Decl., Ex. 6 at 10-11. Second, evidence submitted to this Court on June 6, 2006, shows that plaintiff Whitehead was actually employed by OCB between 2000 and 2003, according to her W-2 forms. Strobel Decl., Ex. D. She was employed by Hometown Buffet, Inc. for only part of 2000, again according to her W-2 forms. Strobel Decl., Ex. E.

On April 28, 2005, this Court remanded the case to San Francisco Superior Court, holding that Hometown Buffet, Inc. failed to meet its burden of proof that the value of Whitehead's claims exceed $75,000. Clapp Decl., Ex. 3.

On July 21, 2005, San Francisco Superior Court denied Hometown Buffet, Inc.'s motion to transfer the case to San Diego County. Clapp Decl., Ex. 5.

Defendant HomeTown Buffet, Inc. did not disclose that some HomeTown Buffet restaurants in California were operated by a different entity during either of those two proceedings. Plaintiffs

3

Motion to Remand at 3.

On July 29, 2005, defendant HomeTown Buffet, Inc. responded to plaintiff Tiffany's first set of special interrogatories, stating that 58 Hometown Buffet Restaurants were operating in California. Clapp Decl., Exhibit 6 at 10-11. Hometown Buffet, Inc. did not proactively disclose in those responses that other HomeTown Buffet restaurants in California were operated by a different entity. Clapp Decl, Ex. 6.

On August 1, 2005, defendant HomeTown Buffet, Inc. produced the personnel files of plaintiffs Tiffany and Whitehead in response to Plaintiffs' first request for production of documents. Several of these files include the logo for Old Country Buffet, alongside the logo for HomeTown Buffet, and Buffets, Inc. *See* Clapp Decl, Ex. 8 and 9; Strobel Decl. Ex. H.  These files do not explain that OCB owned or operated some HomeTown Buffet restaurants. *See id.*  One document, a request for verification of employment—used to evaluate plaintiff Tiffany for a mortgage and completed for the mortgage company by HomeTown Buffet, Inc.—states that plaintiff Tiffany "worked for both OCB Restaurant Co. and HomeTown Buffet" and that both companies "are under 'Buffets Inc.'" *See* Strobel Decl., Ex.H at D00154.

On September 30, 2005, defense counsel stated in a letter to plaintiffs: "It remains unclear whether Plaintiffs intend to pursue claims on behalf of Defendant's separate, sister-subsidiary company, OCB Restaurant Company, LLC."  Fleigel Decl., Ex. B at 8, n.9.

In a letter dated November 18, 2005, defense counsel disclosed to Plaintiffs for the first time that OCB owned and operated 28 out of the 86 Hometown Buffet restaurants in California:

> Your letter is also silent as to whether Plaintiffs intend to pursue claims on behalf of employees of Defendant's separate, sister-subsidiary company, OCB Restaurant Company, LLC.  Hometown Buffet, Inc. is the only defendant named in the Complaint.  It makes sense for purposes of discovery and other reasons to sort this out.  Of the 86 HomeTown Buffet restaurants in California, 58 are owned and operated by Defendant, Hometown Buffet, Inc., and 28 are owned and operated by OCB Restaurant Company, LLC.  Please le[t] me know your position (or intentions) with respect to OCB Restaurant Company, LLC.

Exhibit 10 to Clapp Decl.

On March 15, 2006, the San Francisco Superior Court approved the parties' stipulation

4

allowing Plaintiffs to file a First Amended Complaint naming OCB as a defendant. Clapp Decl. at ¶ 14.

Tiffany and Whitehead both received paychecks and W-2 forms *separately* from OCB and HomeTown Buffet, Inc. well before the time of the filing of the Complaint, Strobel Decl., Ex.s A-G. These documents were not produced by Defendants until April 21, 2006. Donnelly Decl. at ¶ 5. In their responses to requests for the production of documents submitted on November 16, 2005, Plaintiffs both swore to the best of their knowledge that they did not possess any documents pertaining to their wages or compensation with HomeTown Buffet, Inc. Donnelly Decl., Ex. 2, Tiffany's Responses to Document Request Nos. 16, 23-24, 28-29, 68; Donnelly Decl., Ex. 4, Whitehead's Responses to Document Request Nos. 16, 23-24, 28-29, 68. Tiffany and Whitehead declare that they first learned that OCB operated some of the HomeTown Buffet restaurants in California from their counsel, "a few days" before their declarations were executed on May 23, 2006. Tiffany Decl. at ¶ 2; Whitehead Decl at ¶ 2.

### 3. Procedural History

Plaintiffs originally filed their complaint in the San Francisco Superior Court on November 12, 2004, naming HomeTown Buffet, Inc., as the defendant.

After answering in the Superior Court, defendant removed the case to this Court on January 4, 2005. In its Notice of Removal, defendant argued that pre-CAFA diversity jurisdiction existed because: (1) the parties are citizens of different states (a fact that plaintiffs do not dispute); and (2) the claims of plaintiff Whitehead exceed $75,000, exclusive of interests and costs.

On April 28, 2005, this Court remanded the case to San Francisco Superior Court, holding that Defendant failed to meet its burden of proof that the value of Whitehead's claims exceed $75,000.

On July 21, 2005, San Francisco Superior Court denied Hometown Buffet, Inc.'s motion to transfer venue to San Diego County.

On March 15, 2006, the San Francisco Superior Court approved the parties' stipulation

5

1 allowing Plaintiffs to file, on that same date, a First Amended Complaint ("FAC") naming OCB as a
2 defendant. Clapp Decl. at ¶ 14.

3 On April 11, 2006, Defendants filed a notice to remove the case to this Court alleging subject
4 matter jurisdiction under the Class Action Fairness Act ("CAFA").

5 On May 23, 2006, Plaintiffs filed a motion to remand the case to San Francisco Superior
6 Court.

## LEGAL STANDARD

**A.     Motion to Remand for Lack of Subject Matter Jurisdiction**

In a motion to remand, the burden of proving the propriety of removal rests with the removing party. *Abrego v. Down Chemical* Co., 443 F.3d 676, 685 (9th Cir. 2006); *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002). The district court must remand a case to state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction. 28 U.S.C § 1447(c).

Defendant has based removal on the terms of the Class Action Fairness Act ("CAFA") which grants federal subject matter jurisdiction for "any civil action," where 1) the number of members of all proposed plaintiff classes in the aggregate is 100 or more, 2) the claims of the individual class members, in the aggregate, exceed the sum or value of $5,000,000 exclusive of interest and costs, and 3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d).

Under CAFA, any defendant may remove a case to federal court, without the consent of all other defendants. 28 U.S.C. § 1453. The defendant must file the notice of removal within thirty days from the time of receipt of the initial pleading, amended pleading, motion, order or other paper "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

In ruling on this motion, the Court is guided by the principle that, under CAFA (as before), the removal statutes are strictly construed against removal, and if there is any doubt as to the

6

propriety of removal, the lawsuit must be remanded to state court. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685, 690 (9th Cir. 2006) (citations omitted).

Finally, the party alleging jurisdiction must justify those allegations by a preponderance of evidence. *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-404 (9th Cir. 1996).

## **ANALYSIS**

Defendant OCB removes this case on the basis of the diversity jurisdiction standard created under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(6). Plaintiffs, in their Motion to Remand, argue 1) that CAFA does not apply to defendant OCB and 2) that because OCB has not provided any alternate grounds for federal subject matter jurisdiction, this case should be remanded to San Francisco Superior Court. The Court will first address whether CAFA applies to this case. The Court will then address whether OCB satisfies the diversity jurisdiction standard provided by CAFA. Based on the analysis below, the Court concludes that CAFA does apply to OCB and that OCB satisfies CAFA's standard for diversity jurisdiction. The Court hereby DENIES Plaintiffs' Motion to Remand.

**A.    Applicability of CAFA**

As explained in the section below, the Court concludes that CAFA does apply to defendant OCB.

**1.    Legal Background: The Importance of Commencement and Relation Back**

CAFA applies to actions that were "commenced" on or after February 18, 2005. *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005). State law governs when an action is "commenced" for purposes of CAFA jurisdiction. *Bush*, 425 F.3d at 686-87; *Morgan v. American International Group, Inc.*, 2005 U.S. Dist. Lexis 20393, at *5-*6 (N.D. Cal. 2005) (Chesney, J.).

In the CAFA context, "State law likewise determines whether an amendment of a pleading relates back to the date of the original pleading" or whether it commences a new action. *Morgan*,

7

1  2005 U.S. Dist. Lexis 20393 at *6.[1]  As OCB observes, some courts have held that adding a

2  defendant is a special form of pleading amendment that automatically initiates a new action for

3  CAFA purposes.  *See, e.g., Braud v. Transport Service Co. of Illinois*, 445 F.3d 801 (5th Cir. 2006).

4  However, "the prevailing view is that this determination should be governed by the law of the state

5  in which the action was commenced." *Prime Care*, 2006 U.S. App. Lexis 11775, at *16, n. 6 (*Prime

6  Care* proceeds to criticize the reasoning of *Braud*).  Indeed, Judge Chesney, in our sister court,

7  followed the prevailing view in looking to state relation back law to determine whether adding a

8  defendant commenced a new action. *Morgan*, 2005 U.S. Dist. Lexis 20393, at *6.  This appears to

9  be the approach most consistent with the Ninth Circuit's holding in *Bush* that *state law* determines

10 when an action is *commenced*.

11       As noted above, the original complaint was filed against HomeTown Buffet, Inc. on

12 November 12, 2004.  Pursuant to California state law, this filing—before the start date of CAFA—is

13 the commencement date for the action against HomeTown Buffet, Inc.  Cal. Code Civ. Proc. §

14 411.10 ("A civil action is commenced by filing a complaint with the court.").  The FAC was filed on

15 March 15, 2005, after the CAFA start-date.  The FAC is identical to the original complaint, except

16 insofar as it adds OCB as a defendant for all of the allegations.  If the FAC's amendment adding

17 OCB is found to relate back to the original complaint, the action against OCB will have commenced

---

[1] It is widely accepted that relation back status should be determined by state law and not by the federal relation back rules in Fed. R. Civ. P 15(c)(2) and (3).  *See Prime Care of Northeast Kansas., LLC v. Humana Ins. Co.*, 2006 U.S. App. Lexis 11775, at *4 (10th Cir. 2006) ("Most courts . . . concede that the addition of a new claim sufficiently distinct from prior pleadings may commence a new action removable under CAFA by the affected parties.  The latter courts also generally agree that whether an amendment is distinct enough to give rise to a new commencement date is properly gauged by the forum state's law governing the relation-back of pleading amendments"); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (Easterbrook, J.) ("Although we used Fed. R. Civ. P. 15(c) in Knudsen to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit), state rather than federal practice must supply the rule of decision."); *Carpanelli v. American Standard Cos.*, Inc., 2006 U.S. Dist Lexis 12415, at *9 (N.D. Cal. 2006) (Brazil, J.) ("California's relation back rules likewise determine whether an amended complaint commences a new action on the date of its filing, or whether the amended complaint is deemed to relate back to the filing date of the original complaint."); *Schillinger v. 360Networks USA, Inc.*, 2006 U.S. Dist. LEXIS 31108, at *10 (S.D. Ill. 2006) ("[T]he weight of authority appears to apply the law of the state where a class action was filed in determining whether an amendment relates back so as to commence the action for purposes of removal under the CAFA.")

on November 12, 2004, before the CAFA start date. *See Morgan*, 2005 U.S. Dist. Lexis 20393, at *6-*9. If, on the other hand, the FAC does not relate back, the FAC is deemed to commence a *new* action against OCB on March 15, 2006, the date on which the FAC was filed. *See* Cal. Code Civ. Proc. § 411.10; *Morgan*, 2005 U.S. Dist. Lexis 20393, at *6-*9; *Woo v. Superior Court*, 89 Cal. Rptr. 2d 20, 24 (Cal. Ct. App. 1999) (without relation back, "the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed."); *Pimental v. City of San Francisco*, 21 Cal. 351, 367 (1863) (noting the relationship between the statute of limitations and the commencement of action: the legislature is empowered to prescribe that an action shall be deemed commenced, within the meaning of the statute of limitations, when the complaint has been filed "in the proper court."); *Fireman's Fund Ins. Co., v. Sparks Construction, Inc.*, 8 Cal. Rptr. 3d 446 (Cal. Ct. App. 2004) (new action commenced against defendants added in amended complaint). Because March 15, 2006 falls after the CAFA start date, in the event that the FAC does not relate back, CAFA will apply to OCB.

**2.     Determining Commencement and Relation Back under California Law**

Under California law, "The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint." *Woo v. Superior Court*, 89 Cal. Rptr. 2d 20, 25 (Cal. Ct. App. 1999). *See also Morgan*, 2005 U.S. Dist. Lexis 20393, at *6-*7 (citing *Woo* for this proposition). California courts have provided exceptions to this rule in cases where 1) an amendment substitutes the "true name of a fictitiously named defendant," or 2) where an amendment "merely corrects a misnomer." 5 Witkin Cal. Proc. Plead. § 1151.

**a.     The Fictitious Names Exception Does Not Apply**

The Court concludes that the first exception is inapplicable, as Plaintiffs have not asserted that the FAC merely substitutes in OCB for one of the fictitiously named "Doe" defendants, pursuant to California Code of Civil Procedure § 474.

**b.     The Misnomer Exception Does Not Apply**

As to the second exception, Plaintiffs cite heavily to leading misnomer cases and argue that

9

their amendment adding OCB via the FAC merely "correct[ed] the name of one of the defendants" and should therefore relate back to the original complaint. Plaintiffs Memo ISO Motion to Remand at 1. Plaintiffs explain that they were "unaware that 28 of the HomeTown Buffet restaurants in California were owned and operated by OCB" at the time the original complaint was filed. *Id.* at 6. Plaintiffs proceed to explain how their mistake "was excusable," given the facts and history of this case and the mistaken representations made by HomeTown Buffet, Inc. and noted in the Facts Section above. *See* Plaintiffs Reply Memo at 6-10. This argument, however, does not qualify for the "misnomer" exception under California law. The misnomer cases permit relation back where the plaintiffs sued the proper party, but "used the wrong name in identifying that entity." *Morgan*, 2005 U.S. Dist. Lexis 20393, at *8. In other words, "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pacific Coast Building Products, Inc.*, 22 Cal. Rptr 3d 453, 457 (Cal. Ct. App. 2004). Whether relation back will be granted "depends on whether the misdescription or mischaracterization is merely a misnomer or defect in the description or characterization, or whether it is a substitution or entire change of parties. In the former case an amendment will be allowed; in the latter, it will not be allowed." *Id.* "[I]t is important to maintain the distinction between correcting an honest error in the name of a correctly named party and joining a new party in the litigation for the first time under the guise of a claim of misnomer." *Kerr-McGee Chemical Corp., v. Superior Court*, 206 Cal. Rptr. 654, 657, n.4 (Cal. Ct. App. 1984)

In *Morgan*, for example, plaintiffs sued the appropriate party, a trustee listed on the deeds of trust in question, but referred to it by the two incorrect names that had been mistakenly written on the deeds. *Morgan*, 2005 U.S. Dist. Lexis 20393, at *8. The court held that this constituted a misnomer and granted relation back to the filing of the original complaints, which preceded the CAFA start date. As a result, CAFA was not applicable to the case, and the court granted plaintiffs' motion to remand. *Id.* at *9, *12.

Other examples cover misnomers where plaintiffs sued a defendant using the defendants' fictional business name in the complaint, rather than the defendant's proper corporate name. For example, in *Hawkins*, a case cited by Plaintiffs, plaintiff sued the correct party, his employer, but named it as Basalite Corporation in the complaint (a fictional name under which the defendant conducted business) instead of the defendant's proper corporate name, Pacific Coast Building Products, Inc. *Hawkins*, 22 Cal. Rptr at 458.

Another form of misnomer involves "dual entities with strikingly similar business names." 5 Witkin Cal. Proc. Plead. § 1151 (quoting *Mayberry v. Coca Cola Bottling Co. of Sacramento*, 53 Cal. Rptr. 317, 320 (Cal. Ct. App. 1966)). For example, in *Mayberry*, a case cited heavily by Plaintiffs, the plaintiff mistakenly sued Coca Cola Bottling Company of Sacramento, Ltd. (a syrup supplier) instead of Coca Cola Bottling Company of Sacramento, a partnership (which performed the actual bottling that gave rise to the complaint). *Mayberry*, 53 Cal. Rptr. at 318-19. The court held that this was a case of misnomer and that the amendment changing the defendant's name in the complaint could relate back. *Id*. at 321. The court found that the amendment constituted a correction to "erroneous description" and not a "change of identities," *id.* at 319:

> [plaintiff] committed an excusable mistake attributable to dual entities with strikingly similar business names or to the use of fictitious names. . . . . The plaintiff intended to sue the firm which had bottled the beverage and was responsible for the alleged contamination. The participation of dual entities in an integrated production enterprise, the relationship between the corporate name and the well-known Coca-Cola product, the substantial identity of the persons involved in both firms -- these circumstances were sources of excusable mistake on plaintiff's part and of awareness on the part of the real tortfeasor.

*Id*. at 320.

The court in *Prince* elaborated on this "dual entity with strikingly similar business names" category of misnomer. *Prince v. Jensen Motors, Inc.*, 188 Cal. Rptr. 911 (Cal. Ct. App. 1983). In *Prince*, the plaintiff sued over a breach of implied and express warranty of fitness involving his car. *Id*. at 912. The plaintiff named Jensen Motors, Ltd. (the car manufacturer) in his complaint, but served Jensen Motors, Inc. (the car distributor). *Id*. The court held that ths was a misnomer case involving "an excusable mistake attributable to dual entities with strikingly similar business names."

11

*Id.* "Since a claim for breach of warranty, either implied or express, lies only against a seller, it was obvious that plaintiff intended to sue Inc., the seller." *Id.* The court allowed relation back so that the plaintiff could amend the complaint "to state expressly what its complaint now infers--namely that Inc. is claimed to be liable as the seller of the allegedly defective automobile." *Id.* at 913

In light of the above authorities, the Court concludes that the misnomer exception for relation back does not apply in the instant matter.  In adding OCB as a defendant via the FAC, Plaintiffs were not "correcting an honest error in the name of a correctly named party" but were rather "joining a new party in the litigation for the first time under the guise of a claim of misnomer." *Kerr-McGee Chemical Corp., v. Superior Court*, 206 Cal. Rptr. 654, 657, n.4 (Cal. Ct. App. 1984). Plaintiffs did not misstate OCB's name in the original complaint, as was the case in *Morgan*; nor did they name it by a fictional business name rather than by its proper corporate name, as was the case in *Hawkins*; nor did they accidentally enter a "strikingly similar business name[]" on the original complaint instead of OCB's proper corporate name, as were the cases in *Mayberry* and *Jensen*.  As noted above, the misnomer cases permit relation back where the plaintiffs sued the proper party, but "used the wrong name in identifying that entity."  *Morgan*, 2005 U.S. Dist. Lexis 20393, at *8. *See also Hawkins*, 22 Cal. Rptr 3d at 457.  Plaintiffs here did not sue OCB in the original complaint under the wrong name, as is required for the misnomer exception.  Rather, at the time they filed the original complaint, counsel for Plaintiffs and the Plaintiffs themselves "did not know that OCB owned and operated any of HomeTown Buffet's restaurants in California."  Clapp Decl. at ¶ 2; Tiffany Decl. at ¶ 2; Whitehead Decl at ¶ 2.

### 3. **CAFA Applies**

Thus, the Court concludes that the addition of defendant OCB in the FAC does not qualify for an exception and falls under the general California rule "that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint." *Woo v. Superior Court*, 89 Cal. Rptr. 2d 20, 25 (Cal. Ct. App. 1999).  Thus, the action against OCB in this case was

12

commenced by filing the FAC with the court on March 15, 2005. *See* Cal. Code Civ. Proc. § 411.10; *Morgan*, 2005 U.S. Dist. Lexis 20393, at *6-*9; *Woo v. Superior Court*, 89 Cal. Rptr. 2d 20, 24 (Cal. Ct. App. 1999) (without relation back, "the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed."); *Pimental v. City of San Francisco*, 21 Cal. 351, 367 (1863) (noting the relationship between the statute of limitations and the commencement of action: the legislature is empowered to prescribe that an action shall be deemed commenced, within the meaning of the statute of limitations, when the complaint has been filed "in the proper court."); *Fireman's Fund Ins. Co., v. Sparks Construction, Inc.*, 8 Cal. Rptr. 3d 446 (Cal. Ct. App. 2004) (new action commenced against defendants added in amended complaint). Because March 15, 2005 is after the CAFA start date, the CAFA diversity jurisdiction standards are applicable to OCB.

### 4.     Equitable Arguments Against CAFA Are Irrelevant at this Point

Finally, the Court concludes that Plaintiffs' citation to *Cuadros v. Superior Court*, 6 Cal. Rptr. 2d 18 (Cal. Ct. App. 1992), and Plaintiffs' references to the equities in the instant matter are unavailing as an alternate means of avoiding federal subject matter jurisdiction. The court in *Cuadros* relied on equitable estoppel to allow the plaintiff to amend a complaint after the statute of limitations had run. *Id.* The court held that while defendants do not have "an affirmative duty to disclose to [the plaintiff] her error [regarding her actions in naming the wrong defendants], defense counsel is prohibited from taking willful action to mask that error from [the plaintiff]." *Id.* at 22. Plaintiffs in the instant matter refer, in turn, to defendant Hometown Buffet, Inc.'s 1) errors, noted in the Facts Section above, regarding ownership of the restaurants and employment of plaintiff Whitehead and 2) delay in informing Plaintiff about OCB's restaurant holdings. *See, e.g.*, Plaintiffs Reply Memo at 8-10. Plaintiffs in the instant matter may not argue for equitable estoppel here, where they filed their Motion to Remand more than 30 days after OCB's April 11, 2006, removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal.");

*Roskind v. Morgan Stanley*, 165 F. Supp. 2d 1059, 1064 (N.D. Cal. 2001) (remand motion based on equitable doctrines must be filed within 30 days of removal).

**B.     Determining Whether OCB Satisfies the CAFA Criteria**

Having determined that CAFA applies to the action against defendant OCB, the Court proceeds to determine whether OCB satisfies the CAFA criteria for federal subject matter jurisdiction. The Court concludes that OCB satisfies the CAFA criteria.

As a preliminary matter, the Court concludes that OCB's notice of removal under CAFA is timely, filed on April 11, 2006, within 30 days of the March 15, 2006, service on OCB of the Summons and FAC.  *See* Stip. and Order Permitting Filing of FAC.

In determining whether CAFA grants subject matter jurisdiction, according to the legal standard cited above, the Court must find by a preponderance of evidence 1) that the proposed class contains at least 100 members; 2) that the total amount in controversy exceeds 5,000,000 when aggregated across all proposed class members; and 3) that there is diversity between at least one class member and at least one defendant. 28 U.S.C. § 1332(d). Plaintiffs do not contest that these criteria are satisfied.

First, OCB alleges that the Plaintiffs' proposed class includes well over 100 subordinate managers and provides the numbers of the subordinate managers in all of the Hometown Buffet restaurants across California. *See* Notice of Removal at ¶¶ 18, 25, 29 (citing the Declaration of David Busch, Buffets, Inc.'s Employee Relations Coordinator as evidence of these numbers). This satisfies, by a preponderance of evidence, the class size requirement—particularly in the absence of contravening evidence from Plaintiffs.

Second, OCB alleges that the total amount in controversy exceeds $5,000,000, again using data from the Busch Declaration and detailed calculations to illustrate how plaintiffs aggregate claims can be valued in excess of $5,138,228. *See* Notice of Removal at ¶¶ 17-30. This satisfies, by a preponderance of evidence, the amount in controversy requirement—particularly in the absence of contravening evidence from Plaintiffs.

14

Third, the parties are sufficiently diverse—Plaintiffs are alleged to be citizens of California, FAC at ¶ 1, while both defendants are citizens of Minnesota, Notice of Removal at ¶ 15; Notice of Removal at 4, n. 3.; 28 U.S.C. § 1332(c)(1) and (d)(10) (explaining how citizenship of corporations and unincorporated associations are to be determined). This satisfies, by a preponderance of evidence, the amount in controversy requirement—particularly in the absence of contravening evidence from Plaintiffs.

Because neither of the defendants are citizens of California and because States, State officials, or other government entities are not listed among the defendants in the FAC, none of the exceptions to CAFA diversity jurisdiction apply here. *See* 28 U.S.C. § 1332(d)(4) and (5).

Therefore, the Court concludes that subject matter jurisdiction is appropriate under CAFA and hereby DENIES Plaintiff's Motion to Remand.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiffs' Motion to Remand [Docket No. 19] is DENIED.

IT IS SO ORDERED.

Dated: 6/22/06

*Saundra B Armstrong*

SAUNDRA BROWN ARMSTRONG
United States District Judge

15